May it please the Court and our CFA for the appellant and respondent in this matter. I'd like to first address, as set forth in the briefing in detail, the respondent contends that the issue was a request to disclose the addresses of an informant prior to trial so an investigation could be done prior to trial in this matter. The petitioner disagrees. I think the record set forth in detail that this indeed dealt with a pretrial disclosure of the information. Well, nothing that was said either as to your reasons for not giving the address or as to the Court's reasons for agreeing that you didn't have to give the address suggested that anything was going to be different at the trial. I mean, it wouldn't make any sense. The reasons you gave equally apply to trial. The reasons that were approved equally apply to trial. I'm sorry? I'm sorry. The request was done by the defendant or the petitioner in this matter at the trial level because they wanted to investigate prior to trial, and that was what the specific language used in the request. And the reasons you gave for not allowing it, which were fairly generic, were something to the effect of, well, it could be dangerous and we need to, and we're still working on other cases. And it was a week before trial, right, when this happened. And no one said, well, fine, you can have it in a week. In other words, or you can raise it at the cross-examination. But there was no indication that there was a request during cross-examination for the disclosure. I know. That's not what I'm saying. I'm saying that I – it appears that this was essentially in the nature of a – almost a reverse motion eliminating the way the California rules were set up. And they had every reason to think that if they had stood up and said the same thing at the trial, it would have been the same answer. But they didn't do that in trial, and as this Court recognized in Hernandez, you know, there is a separate issue between the post-trial discovery request and then the request on cross-examination. What I'm saying is that the way this was treated, it appears to have been a ruling that applied both before and during trial. Well, then to go on and indicate, even if it was encompassing at trial within the motion and the ruling of the court, there still is no confrontation clause violation in this case. If you apply the line of cases dealing with the disclosure during trial, there is no confrontation violation, nor was the state court decision unreasonable application or contrary. Which one, I'm sorry? I'm having a hard time hearing. I'm sorry. Even if you assume that the disclosure at trial was at issue, there is no indication of a confrontation clause violation in this case, nor was it an unreasonable application or contrary to established Supreme Court precedent. If you look at the case law with respect to what the Supreme Court has indicated, it is a very general broad rule with respect to limiting cross-examination at trial. In fact, the court indicated that trial judges retain wide latitude insofar as the confrontation clause is concerned to impose reasonable limits based on concerns, among other things, harassment, prejudice, confusion of the issue, the witness's safety, or interrogation. But in this case, first of all, with regard to addresses in particular, there is close to a generic rule. I mean, it's the only – there's no case in the Supreme Court that's ever held that it was okay not to give an address, right? The only two cases that are actually about addresses said that there was a confrontation clause problem. Yeah. The Alfred and Smith cases did indicate that in those cases the address – Counsel, I'm having trouble hearing you. I'm sorry. I apologize. Did indicate in those two cases that the address did need to be disclosed on the stand during cross-examination. But as I indicate, the Van Aardsdal case that's cited, which is not specifically dealing with an address disclosure but is dealing with an abridgment of a cross-examination, that set forth the general rule with respect that the trial court maintains broad discretion within this issue. And also in this case, the prosecution did come forward with an indication that disclosure of this witness's address would lead to potential harm of the witness as well as harm to the potential investigation. Nothing specific. Just a generic statement. He did not – yeah. The prosecution in this case did not specify particular harm, but I do not think that the established clearly – Threats, actual threats, or any reason to think there was a harm. Well, he did indicate that he did believe that harm could come of the witness in this case. But did he give any reason? That wouldn't be true of everybody in the circumstances? He did not specify particularly what harm and what the basis of that contention was. On the other hand, I don't think that that's required by – Just a minute. The other reason, which was that they wanted to continue to use this person, doesn't seem like much of a reason at all. First of all, it's hard to believe that that would overcome somebody's cross-examination rights, and second of all, she was going to testify at trial anyway. They already knew who she was, and if we follow your reasoning, don't we render Smith and Alford actually moot? I mean, if all you have to make is a generalized statement that the informant could suffer harm, when everybody knows who the informant is already anyway, all they're asking for is the address. Well, I think in this case, if you look at the – once again, the general rule as far as what the Supreme Court precedent is, to see if this decision was contrary to that. The general rule is a broad rule, and it's a case-by-case determination when you have a broad rule. And while this court might come out differently, I do not believe that the record is such that you could say that the state court decision was an unreasonable application or contrary to the Supreme Court precedent. In addition, a number of lower court rulings have indicated that there is a strong inference that can be made when there is a claim of harm on an informant in drug cases because it doesn't take much imagination. I'm not sure whether this is true of every case, but from what I can tell looking at the cases, those were instances in which there was often an in-camera declaration that said, this is why we believe that this person is in danger. Something happened. There was a threat. There was something. I don't believe, and there's a string site, that I don't believe in all those cases that there was an actual affidavit within that. And the cases suggest that the court can infer from the assertion. And like indicated in Hernandez, this court said that there just needs to be some indication by the prosecution. And here there was some indication. And there is no Supreme Court authority that's indicating that it has to be to the level that the district court here was saying it needed to be. But what you're really saying is that, as you just said, essentially that in any drug informer case that same indication is going to exist. Well, I think the cases say that that can be inferred. Here we have that in combination with the actual statement and assertion by the prosecutor. It was nothing more than a generic statement. It was a general statement that there could be harm or would be harm to the informant. Because it was a drug informer, not for any other reason. And there also is the concern about the informant also working on other ongoing cases. No, but as I pointed out to you, I find it very hard to believe that that concern can overcome anybody's right to confrontation. Well, also with respect to this case, the full context of it was the informant was produced for an interview and was allowed to be interviewed prior to the trial. The witness was placed in her context. The criminal record or lack thereof in this case was disclosed to the other side. The compensation amount that the informant was paid for this case was disclosed. So there is substantial information that was disclosed, as well as the witness being allowed to be interviewed prior to trial. You're not arguing that there was a failure to show prejudice or that prejudice is required, are you? Yes. Where is that in your brief? Excuse me. The last argument, I believe, I indicated that there was, on page 45, under the Brecht standard, there was no substantial injurious effect or influence to determining the jury's verdict. I have just a half minute left. If I'd like to reserve some time. If it may please the Court, I'm Jacob Weisberg, and I am representing the Petitioner-Respondent in this matter. Mr. Weisberg, were you the trial attorney? No, I was not. I'd like to go to some of the issues that you've raised. The issue of what was presented as placing this witness in the community is what didn't really go to the issue that had to be raised at this trial. You've got to remember, this witness was the only witness that placed my client in this case. She – there was no evidence. She was not at the buy. When they searched her house, there was no indication of drug activity. The only evidence was this statement that she allegedly made at Radio Shack where she goes up to this woman out of nowhere and says, are you part of the drug traffic, if you can believe that story. And then the other stories were these statements that were allegedly made between my client and the witness, which were, as you know, supposedly taped. Or at least the witness testified at trial that it was taped. However, of course, no tapes were ever produced, and that never seemed to do. And the heroin wasn't produced either. Beg your pardon? And the heroin was not produced. The ten ounces of heroin that she saw was thrown out. And after a three-hour search and – But this is what I'm having a lot of trouble with. Beg your pardon? This is what I'm having a lot of trouble with. Yes. I understand that there's a general rule that you're supposed to be able to get addresses. But you're not arguing now that you were entitled to it pretrial as opposed to at trial. At trial. So at trial, if you would ask her address, what good would it have done you? Well, what's interesting, if you look at Hernandez, because the same issue came up in Hernandez, and the Court says in Hernandez, well, look, the day that you got the address was – I forgot when it was, and the case went on for another six or seven days. And in Hernandez, that same issue was raised, and the Court said – How long was this trial? Beg your pardon? How long was the trial? You know, I don't recall. I think it was four or five days. But the point is that, you know, the Smith case, what it says, what Smith says is that written – I mean, in Alford, the point of the question was it turns out the guy was in prison. Which one? Right? In Alford. So that was useful in itself. And I suppose there might be instances where the person lived might be interesting, useful in itself. Like the person lived in Beverly Hills, and you'd say, where did you get all the money to live in Beverly Hills? But it would be a rare instance, it seems to me, in which really there would be any point to it. So what's – so that leads me to the question is, what's – is there a prejudice standard here, and what is it? Well, let me – the thing that I found interesting, when you go back and look at these cases, you look at Smith. Smith says the witness's name and address opens countless avenues for in-court examination and out-of-court investigation. That is the standard. But you haven't now – no one's even shown up now to tell us where did she live and what would you have come up with. So does that matter? But the point is, as you know, I did request an evidentiary hearing before the district court, which was taken under submission and not granted because the judge granted it – granted the petition. I have asked for an evidentiary hearing. But the point – yes. Let me get this straight. Was the request made for the address before trial? There was an address – well, under California law, the prosecutor is obligated to disclose 30 days before trial under the penal code the names and addresses of the witnesses he intends to call at trial. Right. Okay. How long before trial? Thirty days. Okay. Okay. And then the – That's how Penal Code 1054 – is that what you're talking about? Right. But that refers only to pretrial discovery. Well, I don't believe it does because it says you – because I think if you look at the way it's set up, it is actually set up that you are – you have to give the names and the address of who you're going to have called as a witness at trial. Okay. Then you – so say you don't disclose it like they didn't in this instance. Then there's an obligation by the defense to bring a motion, because the obligation on the prosecutor was to disclose who they were going to call at trial. And that's just – I think it was really like Judge Berzon said. It's really more like – almost like an in limine motion. Remember, it's very close to trial. And basically, they – you know, it's set up in such a way that it's supposed to be disclosed. If it's not, you better do something to find out. But the issue is at trial. And there's no question, when you look at the argument made by the prosecutor, when he talked about the name of the person, he said, hey, I'll give it to you a week before trial, but when he talks about the address, no way. Now, no way. And if you look at the court of appeal decision, there's no question that that is how the court of appeal saw it also. That was never raised in the court of appeal. It was a pre…  Well, I understand in the Supreme Court cases to say that you always have to get the address. Presumably, if they come in with some real reason to think that there was a problem, the judge would have had discretion to deny it, wouldn't he not? Well, you know, Your Honor, actually, when I went and read, Alfred doesn't say that. Alfred says there's three things. That is, harass, annoy or humiliate. That's what Alfred says. Then Smith says the same thing. Now, there's a concurrence in Smith that my colleague said was dicta, which I might want to support for this argument at least, that, you know, Justice White says, well, I also think the danger to the witness, but that is really a concurrence. And I think that has to be the case. I mean, it's worse. Danger is worse than harass and humiliate. If you look at the evidence that was put on in Hernandez as an example of what this is what we're looking at, and this was pretrial. They still required in Hernandez, they put on an extensive affidavit of, you know, they've been threatened, there were guns at the house. One of the – there had been phone calls of threats. There had been indications that there had been a contract out on the guy. This was in the declaration. And the Court still required disclosure of the address at trial. Now, in this case, as you pointed out, in this case, there was nothing. There was not one piece of – I mean, to read the record here, you'd think that – All right. So let's go to my other question. What about the prejudice issue? I mean, this is where – what I got out of the prejudice question. In other words – Yes. First of all, Van Arsdale says in general, as I understand it, that there is a prejudice prong of confrontation clause, but it isn't effect on the trial. It's effect on the witness, so to speak. Is that right? Is that what Van – Well, I think that – And I guess my question is this. Alford and Smith seem to say that there is no prejudice prong. And the question is, has Van Arsdale modified that? Well, I think that Smith and Alford are very clear that this is a constitutional violation. They go into all this language about you don't have to prove where this is going to go. Yeah, but they're relatively old cases. And these days, we – the kind of – the kind of frustration I'm expressing, you know, why are we doing this if we have no reason to think it's going to turn anything up, seems to be given more sway. And Van Arsdale seems to do that. Well, let me – look. If you look at the argument made in the court of appeal and by the prosecutor as to why they think that she was placed in her context, right? So what you have is, okay, she doesn't have a criminal record. She has been a narcotics agent for 20 years, an undercover agent. And then she – and I think the part that I find remarkable in the court of appeal decision, they made some statement that there is no evidence, there is no evidence that she had a reputation in the community for unreliability. That is in the court of appeal decision. And the reason there's no evidence of her standing in the community is because there was never any evidence allowed. The cross-examination was cut off. There was no examination allowed to find out what community she even lived in. And the evidence of her reputation is the B&E's testimony, oh, she's a reliable informant. Now, that's – that's great. The point of Alfred and Smith is that our system is to allow cross-examination, an independent cross-examination of independent witnesses, and the opportunity to find independent witnesses, not, you know, if this were to be followed, it basically says the prosecutor can determine what is the reputation of their own witness. Well, we've told you that she doesn't have a criminal record. We've told you that she, you know, has been, you know, she has a good reputation with us. Isn't that good enough? We're not going to tell you where she lives. We're not going to talk about any of the cases that she has testified in. Ginsburg. I thought she was living in a drug community or living with drug probationers or et cetera. So that might be evidence. We don't know where she was living in Fresno. I mean, it's possible that we could find out that next day that she's living in a community where she's dealing drugs, for all we know. I mean – At least where others are dealing drugs. That's the point. That's where you start. And they didn't even let us start. I still got to ask this question. Sure. When was the address first requested? Oh, about 35 days – well, it was disclosed that they were not going to do it. 30 days, they did not disclose that they were required to. A motion was then filed, I think, about 35 days prior to trial. Your position is the violation of the confrontation clause comes during the trial, not pre-trial. Correct. And that you asked during the trial, you were forbidden to ask about her address. Well, our position is that once the motion was denied, it precluded it from being raised at trial. And that is what everyone did, including the court of appeal. Okay. But the argument we're making is – All right. Okay. Thank you. But the point I want to finish with is that why this is important is we couldn't even find out where she lived in Fresno, what her immediate situation was, let alone look and see – you know, if this woman's been testifying for 20 years and made half a million dollars, I can't – it's not believable. It's not within human – you know, our general experience that she never made a mistake, that she never lied. Let me just ask you something, though. I thought they did give you all the prior cases. Big pardon? I thought they did give you the prior cases. None at all. Not one. They didn't? They did not give any indication of any prior cases. This woman was an enigma. Did you ask? That was part – well, that's – well, I believe that they asked for the address of where she's lived for the last five years. But I thought they gave all the – are you sure that they didn't give you all the prior cases? I am sure they did not give any prior cases, because that – we probably wouldn't be here if they'd given a list of prior cases, because then we'd know where she had lived and be able to follow up on her reputation and also her reputation with law enforcement or defense counsel in those communities where she has testified. Okay. Thank you very much, counsel. Thank you. What information was given on her? What information was provided with regard to this? Well, she was made available for an interview, information – I'm sorry. She was made available for an interview and was interviewed by the petitioner, information regarding the compensation in this case and that she'd worked on a number, I think 20 or 30, but a number of drug cases. Just the number, but not the cases? I do not think there's an indication in the record that there was a providing of the actual case names and case numbers. I'd have to go back and verify. I see. Was that requested, do you know? I do not know if that was requested. Okay. And in addition, her prior – in here it was a lack of prior criminal record, but her criminal record, lack thereof, was disclosed as well. And I just wanted to indicate one thing with respect to the harmless error discussion that we're having. In the federal habeas context, separate from the constitutional violations, still under the Brecht standard, there still needs to be injury shown with respect to whatever, if constitutional error is determined, which, of course, I contend is not the case here, but we still have that Brecht test that would have to be shown, which I don't believe is shown in this case. Okay. Thank you very much, counsel. Thank both counsel for a useful argument. The case of Barajas v. Wise is submitted. We'll go on to Palmer v. Garamendi.
judges: Bright , D.W. Nelson, Berzon